**UNITED STATES of America, Plaintiff,**

v.

**James Wesley AKERS, James Arthur Cronin, Frank Stearns Giese, and Chester Benson Wallace, Defendants.**

**No. CR 74–33.**

United States District Court,
D. Oregon.

Nov. 21, 1974.

See also, D.C., 499 F.Supp. 43.

Charles H. Turner, Portland, Or., for plaintiff.

Donald W. Chambers, Portland, Or., for defendant Cronin.

Charles P. A. Paulson, Portland, Or., Michael E. Withey, Seattle, Wash., for defendant Giese.

OPINION

(Sentencing)

JAMES M. BURNS, District Judge:

It is my custom, and that of the other judges on this court, to discuss the reasons

for sentences we impose.[1] We are encouraged to do so by the American Bar Association's Standards of Criminal Justice and I believe it a wise practice. Defendants, attorneys, the public at large and, not least, judges themselves are well–served if we set out the purposes we hope to achieve by sentencing decisions. Defendants before the court should know that the sentences they receive have their basis in reason, however imperfect, rather than prejudice or bias or temper. Attorneys who have well and energetically represented both prosecution and defense should know that their contributions to the sentencing process have been fully considered. The public at large whose courts these are, should see both the workings of the criminal justice system and its conclusions. Finally, we who impose sentence are helped to do so carefully and thoughtfully if we articulate our reasons for what we do. Reasoning bared to the light of open court is more likely to be right reasoning.

When a case attracts great attention, as this one has, from the media as well as from many spectators, nearly all involved are tempted to see the case as extraordinary, wholly different from the daily work of the courts not only in notoriety but also in kind. We are urged to apply principles different from those that customarily guide us. I resist those urgings.

However difficult the questions it presents, this case is not in its essentials unlike the so–called more common criminal cases that come before me. Behavior deemed anti–social by the people, through their Congress, has been forbidden by law, charged against these defendants and others, and proven beyond a reasonable doubt to a jury at trial. Defendants have been convicted of simple and dangerous crimes: bombing, carrying of weapons, and a conspiracy to commit these crimes. No crime of thought or speech is charged here, no crime of politics or persuasion.

I turn now to the specific goals that sentences may seek to achieve. First, and most stark, is isolation. A particular criminal may present so great a danger to the community that, for the protection of the community, he must be physically separated from it. All sentencing is, of course, in part, an exercise in prediction. When the prediction is that serious future harm or violence is very likely, a responsible judge may conclude that prolonged imprisonment is necessary. No doubt the need to imprison solely for purposes of isolation is in some measure an admission that our efforts to change behavior are often unsuccessful. The efforts may be poorly staffed, inadequately financed, or fundamentally misconceived; behavior may be vastly more complex than we are sometimes encouraged to believe. Whatever the reason, we are willing to take only very limited risks when the danger is very great.

I am satisfied that neither Dr. Giese nor Mr. Cronin presents a danger of this kind. Their records show no pattern of repetitive violence, no history of criminal activity, no inclination to crime apart from the particular historical and political circumstances of the crime for which they were convicted. Predicting individual behavior is uncertain enough: I will not attempt to predict as grounds for incarceration a new war in Southeast Asia, a new decade of growing political opposition, a new stalemate in Paris negotiations, or a new Christmas bombing of a nation's capital.

Sentences may also seek to rehabilitate offenders. Some criminals can rather clearly benefit from the educational and therapeutic resources of the prison system, either within the walls of a total confinement institution or in some more limited setting. Drug sellers who deal small quantities to support habits that have roots in emotional disorders may be powerfully helped by imaginative psychotherapy. Young persons who steal automobiles and drive them across state lines may find high school

---

1. The following was delivered orally at the time of sentencing. Footnotes have been added and these remarks have been edited slightly for publication.

equivalency and other educational opportunities useful in putting together a less risky and more law–abiding life.

Dr. Giese and Mr. Cronin would not, I think it is obvious, benefit from the rehabilitative resources of prison. Both are well–educated, Dr. Giese most impressively so. Both have professional skills and ambitions, either demonstrated or in the making. Neither has serious mental illnesses. Neither is a drug addict. I believe that committing either of these men to a federal prison for purposes of rehabilitation would be foolish.

The most troublesome purposes of sentencing are those to which we now come—retribution, or the expression of community disapproval of law–breaking; and deterrence, or the use of legal threats. The goals are interrelated, perhaps inextricably, and it is not my purpose to discourse at academic length or in academic detail in order to lay out their complexities. I am a sentencing judge, not a sentencing philosopher.

I have indicated my awareness that the crimes of which the defendants were convicted arose in what was, for them, a political context. Although I do not and cannot know fully what motivated Dr. Giese and Mr. Cronin, I think that their motives were essentially political, as contrasted to the financial ones more usual among criminals. They were apparently convinced that illegal and destructive action was the only political weapon effective to draw attention to, or perhaps to stop, government activities they believed were wrong. The wisdom of their belief is not for me to weigh. As a judge, I must respond only to the illegality of the course they chose.

By this I do not mean that the laws or the government that enacts them are immutable. It was, after all, that aggressive defender of the existing political order, Abraham Lincoln, who said:

"This country with its institutions belongs to the people who inhabit it.

Whenever they shall grow weary of the existing government they can exercise their constitutional right of amending it, or their revolutionary right to dismember or overthrow it." [2]

Corollary to that revolutionary right, however, is the right of the existing government to defend itself by constitutional means. So long as the constitutional order continues, laws may be enacted to define the bounds of legitimate behavior, and juries may convict and judges may sentence those who overstep the bounds.

The destruction of government property and the carrying of weapons for political purposes as much as any other purpose have been declared illegal. The law signals first that the community disapproves; punishment is inflicted to make that disapproval palpable. Second, the law signals a threat: violators of the community rule will suffer. Here we have retribution and deterrence.

Scholarly skeptics and common–speaking cynics alike offer examples to prove that sentences do not deter, but these examples are almost always addressed to a general proposition that is neither provable nor useful. The question is whether punishment of *these* defendants, in *this* court, on *these* charges will, if well–publicized, powerfully discourage the commission of illegal acts for political expression.

We are assured publicity. We cannot, however, be unshakeably certain about an answer to our question, but it is the unavoidable responsibility of judges to make decisions when faced with those uncertainties.

After careful consideration of the evidence in this case, the presentence report, submissions of attorneys for both sides, and a memorandum from community groups, and after consultation with the other judges of this court, I have concluded that a substantial term of imprisonment is necessary for Dr. Giese and Mr. Cronin in order to deter both these men specifically and

2. Inaugural Address of 1861.

other persons generally from directing intense political conviction, however charitable or well—meaning or well—founded, into illegal channels. This community, this city, this state, this nation, face burdens and turmoil enough without the danger of foolish and frustrated persons at large with dynamite and firearms. Furthermore, when crimes violate so fundamental a norm as that governing the political process, the community is entitled to a clear note of disapproval and disavowal.

As to Dr. Giese, for the reasons indicated, on Count X,[3] I impose a sentence of five years in prison under the provisions of § 4208(a)(2), and I further impose a fine of $10,000.

As to Mr. Cronin, on Count I,[4] I impose a sentence of five years in prison under the provisions of § 4208(a)(2); on Count II,[5] I impose a sentence of five years under the provisions of § 4208(a)(2), to run consecutive to the sentence on Count I; on Count III,[6] I suspend imposition of sentence and I place the defendant on probation for a period of five years to commence when he is released from custody; and on Count X, I suspend imposition of sentence and I place the defendant on probation for a period of five years to commence when he has been released from custody.

It is apparent that a discrepancy exists as between the sentences given these two defendants and the sentences previously imposed on the other defendants.[7] This case is an illustration of the well—nigh impossible task sentencing judges face in cases involving multiple defendants where conscientious effort is made to apply the principles of sentencing. I have given especially careful thought to the disparity that has resulted, but given the nature of the counts charged, the verdicts returned, and the nature of the entire case, in my mind these sentences faithfully apply the appropriate principles of sentencing.

I order the defendants to surrender to the custody of the United States Marshal on Monday, December 2, 1974, at 9:00 A.M. to commence the serving of the sentences hereby imposed.

---

3. Count X charged conspiracy "to commit . . . certain offenses against the United States and other persons and institutions by means of acts of violence, terrorism, and disruption, including the use of explosives to damage and destroy . . . certain real and personal property, both public and private . . . ," in violation of 18 U.S.C. § 371.

4. Count I charged unlawful possession of a firearm, in violation of 26 U.S.C. § 5861(c).

5. Count II charged malicious damaging and destruction of a Navy Recruiting Center, in violation of 18 U.S.C. § 844(f) and 18 U.S.C. § 2.

6. Count III charged unlawful carrying of a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2.

7. Codefendants Akers and Wallace were convicted on two counts of violating 26 U.S.C. § 5861(c); two counts of violating 18 U.S.C. § 844(f); two counts of violating 18 U.S.C. § 924(c); and one count charging wilful damaging of federal property by explosives, in violation of 18 U.S.C. § 1361. Akers was sentenced to 10 years' imprisonment on each count, to run concurrently with each other and with the sentence imposed in a companion case. Wallace was sentenced to the sentence imposed in a companion case, and to 10 years' imprisonment on each of the other counts, to run concurrently with each other and with the sentences imposed on the first two counts and with the sentences imposed in a companion case.